Good morning, Your Honors. May it please the Court, Scott Meisler on behalf of the United States. With me at council table is Assistant U.S. Attorney Frank Taman, who prosecuted this case in the District Court. Good morning. Your Honors, the federal forfeiture statute applicable to money laundering offenses provides that the District Court, in imposing sentence, shall order that the defendant forfeit to the United States any property involved in such offense or any property traceable to such property. The District Court here acknowledged that this language makes forfeiture a mandatory part of the sentence, and the District Court further acknowledged that under this Court's precedence in the Federal Rules of Criminal Procedure, the Court had the authority to fix the amount of the forfeiture penalty in a money judgment. The Court nevertheless declined to enter a forfeiture order in this case based on statutory and constitutional reasons that we believe were mistaken and require reversal. I'll begin with the statute, and as I do, Your Honor, I wanted to clarify and emphasize that we're dealing here not with the full array of federal forfeiture statutes, but with one statute in particular, 18 U.S.C. 982, take 1. To that end, can I get you to clarify the government's position about proceeds? It looked like to me that at the hearing on forfeiture, the government agreed that there were no proceeds, but then your brief makes reference to proceeds. Which is it? Your Honor, there were proceeds from what's called the specified unlawful activity. It's the preceding bank fraud on the Panamanian Bank did generate proceeds, but the money laundering violation itself, the violation of sections 1957 and the money laundering conspiracy statute 1956H did not generate proceeds. We agreed with that, and we've maintained that position on appeal. So no proceeds from the money laundering offense, but proceeds from the bank fraud that were laundered in the money laundering transactions. Wasn't the proceeds from the money laundering operation, isn't it undisputed that the corpus of those funds were returned back to the victim, the Chinese bank? Yes, Your Honor. There's no dispute that those funds were returned to the bank. Well, if you could sort of walk me through the actual statute language of 982A, my understanding is for a violation of 18 U.S.C. 1956, which is what the defendant pled guilty to for account one, correct? He pled guilty to 1957, a conspiracy to violate 1957, which is transactions in criminally derived property. So it was in 1956H is the penalty provision that penalizes conspiracies to violate 1957. And under 982A, my understanding, and walk me through it, is a person who is convicted of 1956A, 1957, must forfeit to the government all property that is either involved in that violation or traceable to there. And that property eligible for forfeiture under 982A1 includes the money or property which was actually laundered, the corpus. Yes. Which here is undisputed. The defendant did not possess at the time of the indictment, correct? That's correct. The property, any commissions or fees paid to the launderer, which again, undisputed that there were none. That's correct. And any property used to facilitate the laundering offense? That's correct. Is it your position, where is the money that you're seeking to forfeit under those three exceptions? It's the first category, Your Honor. We've agreed that the corpus, the funds actually laundered is what the $10.426 million that we sought embodies. And under our view, Your Honor, I'm sorry, I'm going to cut you off, but it doesn't matter that the defendant doesn't retain the funds anymore. Let me ask you a question, because Mr. Shrevenick in one of the hearings he had before Judge Scola stated that money laundering does not have a restitution provision or component to it. Is that correct? That's correct. So, in this case, Judge Scola could not order restitution in the amount to the victim of $10 million plus, whatever the laundered amount was? That's correct. All right. And that's, I think, an important point, Your Honor. I think your line of questioning brings up what, to my mind, are the two key points of this case. I think the two issues that that the defendant is facing, and the two issues that are at the center of this case, is that he's not going to be able to withdraw the money that he has, which he can't, in fact, return them to the bank as part of his overall fraud and money laundering scheme. That doesn't matter. And that's most clear, Your Honor, from 982B2. That is the exception, the narrow, safe harbor exception in the statute for low-level money launderers. And I just wanted to take one step back and remind the Court that this statute, 982A1, that we've been discussing, started out, in its original form, as a gross receipt statute, much more akin to the ones that the defense has cited in its briefs. But Congress revisited it twice in the first four years of its existence to make clear that it wanted to sweep much more broadly than that. Involved in it is among the broadest, if not the broadest, language we have in federal forfeiture statutes. And then it further went back, again, two years later, to amend this provision I just mentioned, 982B2, which carves out this exception for low-level money launderers. But I understand that it carves out that exception, but the issue that I'm having, and I think Judge Scola, to some degree, is having the same issue, is that under the provision that you're traveling under, 982A, there are only three ways that you can forfeit the funds. The only one that you're traveling under is the corpus, and the corpus is undisputed, is now with the victim. And so I guess, since money laundering doesn't have that restitution provision, it's sort of an unusual fact, or an unusual factual scenario, because normally in a money laundering, most of the times there isn't a victim that you could say is entitled to this money, and here the corpus was returned in full, and it's undisputed and with interest. That's right, Your Honor, and if this were a restitution case, either because mandatory restitution would be triggered by some statutes, or the money laundering statute itself had a restitution component to it, that would matter a lot. But this Court has been extremely clear in a line of cases for the last 10 years, forfeiture and restitution serve different purposes. And here, I actually think the facts of this case in many ways make clear why Congress wanted mandatory forfeiture. In this case, as Your Honor has discussed, no restitution was due unknowing because the funds were returned. The district court had the discretion to impose no fine, and in fact, imposed no fine. And so you could have a situation absent forfeiture in which a defendant commits a very serious financial crime, and walks away with no financial sanctions whatsoever. That's not, I think, what Congress intended. They intended this to serve as a deterrent. Even in a case where a defendant was not disgorging ill-gotten gains, even where the money the defendant laundered was not going to go back to the victim via restitution, Congress said, we want, as a deterrent overall, serious financial sanctions. And here, the district court imposed none. Money laundering is about, right, as it suggests, making the money clean, right? Rather than always making a profit. Is that correct? That's correct, Your Honor. In some cases, like here, the money laundering transactions, I think by the defendant's own admission, were basically part and parcel of a scheme. He needed these transactions to keep his underlying bank fraud scheme going. What's the government's theory of exactly how this conduct worked, or what the purpose of this conduct was? That's a hard question to answer, Your Honor, because there's some dispute, as you probably see from especially the plea colloquy about that. But I think if you go even by hewing closely to the defendant's own admissions at the plea colloquy, I think he admitted that these were highly irregular transactions, international wires and whatnot, that were used to further a scheme to keep himself and his businesses afloat, that he fabricated invoices to justify draws on a line of credit in a Panamanian bank, wired those internationally to Miami, and then moved the money back to Panama, often in the forms of checks that were planned out beforehand. That's just hewing to his own admissions. He was using these funds to pay back loans or the line of credit on which he was drawing down in Panama. So I think by any account, whatever the underlying purpose was, whether the government believed it was part of this layering plan, or just the defendant's own admissions, I think you end up viewing this as conduct clearly within the elements of the statute, and no one disputes that those elements were satisfied and admitted to in his guilty plea. You know, you're right that our court has made this distinction between the purpose of restitution and the purpose of forfeiture, but haven't our Eleventh Circuit cases talked in terms of ill-gotten gains in the forfeiture context? And if that's true, how does that help us in this case, or how does that guide us in this case? I think the court has spoken of that, and that's often true. I think those cases most often involved where Your Honor's first question went, which is proceeds forfeiture, which I would agree is the more common scenario. It's arisen under the drug statute, some of the health care fraud and other fraud cases this court has seen. The statute is different in that regard, Your Honor. I would acknowledge that. But I would point your court, if you're looking for precedent, to decisions like PUSH, the PUSH case in 2003, and the Chaplins and Sahar cases from 2011 and 2009 cited in the briefs. Those are cases under the money laundering sting statute, which is cases in which the government is coming to someone it has information on and essentially luring them into laundering funds. In those cases, again, I don't think that there's kind of ill-gotten gains. In some cases, those transactions haven't fully transpired yet, and yet still the courts... In Sahar, the monies that were being laundered were used to create a scheme regarding the reason why you were allowed to forfeit the inventory in the stores, because they traveled under the facility, the property was used to facilitate the laundering offense. So I guess the issue is how do you deal with a situation where the corpus no longer exists? Do we just travel under the theory that restitution is different than forfeiture and that it's a harsh penalty, but that's how it is? Yes, I fully agree with that. Exactly that. Restitution is different than forfeiture as a statutory matter. The persons we travel under are 982A1 as funneled through the narrow exception as I mentioned in 982B2 for low-level launderers. If someone doesn't fall within that safe harbor, then they're subject to the general mandatory nature of forfeiture. And yes, I do not want to deny that forfeiture can be, as the Second Circuit said in the Bermudez case that we cited in our briefs, it can be extremely punitive and burdensome, but I believe that Congress commanded that as part of its statutory scheme and it did not want to afford district courts discretion to make equitable exceptions based on unique facts. And so that's what Judge Scola did here, after properly acknowledging the mandatory nature of the statute. I have just a... I'm sorry. I don't want to interrupt you, but I do want to ask this question. How do you get to the $426,000? When I added up the amounts in Section 16 of the PSR, I got $10,750... $10,756,697. I don't know the answer to that, Your Honor. I thought the 10.426 was undisputed. I will check with trial counsel when I sit down and see if I have an answer for you. And if not, we'll try to get you a... If there's any doubt about that and if we agreed that forfeiture was appropriate, would we need to remand for the district court to You might. I guess I'll try to say this on my rebuttal as well. I think for the eighth minute backstop, what we probably would ask the court to do is make clear that the district court doesn't have discretion kind of ad hoc to go down below whatever the correct amount is in its exercise of discretion. But I'll try to address that in my rebuttal time. Thank you. Good morning. May it please the court. My name is Terrence Reed and I along with my co-counsel Jackie Persak are here today as second fiddle for Howard Shrebnick who is unavoidably detained in a trial in New York. Mr. Reed, before you begin, may I ask you a question? Sure. If we were to agree that Judge Scola did not have discretion to not enter an order of forfeiture, that that was mandatory, and I think Judge Grant already asked this question, would we have to remand back to the trial court to make a determination on the forfeiture amount? The short answer to that is that Judge Scola did not exercise any equitable discretion. He acknowledged that the forfeiture was mandatory. He simply said it wasn't proven here. I think in terms of remanding back to the trial court, the only basis for doing that would require you to determine that it was proven here. This court doesn't have the equitable discretion. He never exercised any equitable discretion. Let's say that we thought that the corpus was the appropriate amount of forfeiture. Would we need to remand for Judge Scola to do that? The undisputed record in this case reminds me of a song written by Muddy Waters. The title of it is, You Can't Lose What You Ain't Never Had. I thought you were going to sing for us. The Supreme Court recently in Honeycutt applied this logic to the criminal forfeiture laws. Basically saying, you can't forfeit what you never had. In that instance, it was a brother obtaining proceeds of a drug violation. An admitted co-conspirator, the court said, you have to go after the brother. You can't go after the person who didn't obtain the proceeds. In the record here, it's very clear that this defendant never obtained any of the corpus. The corpus was the credit lines of a company, Vita Panama. Vita Panama, the money cycled back and forth between Vita Panama and the Chinese bank of Vita Panama in Panama. At no point did any of that money go to Mr. Waqued. He never obtained any of the property, any of the corpus. We agree with the government on this much, that this case is a corpus case. The corpus here is present and accounted for. It's been identified. We know where it started. We know where it ended. We know that that entire process, it never crossed the path or the ownership of Mr. Waqued. The government has also conceded, as they did now, that this is not a proceeds case. There are no proceeds to anyone, much less any proceeds going to Mr. Waqued. Proceeds aren't required, right? That's one category of funds that can be forfeited, but that's not the only category. That is right. This court in the Sayher case, borrowed from the 8th Circuit in the Born Fund case, the three categories of property that are subject to forfeiture under the involved in language of Section 982, the first being the corpus, the second being commissions, and the third being facilitation property. The government has conceded here and below that there's no proceeds, there's no facilitation property. The only property at issue is a corpus. What happened to that corpus? It never was obtained by this defendant. In what statute do you locate the requirement that the defendant obtain the property that's forfeited? Well, the statute includes Section 853. However, this court in the Sayher case, quote or quote recited, that is, this court previously in the Gilbert case as saying, the Gilbert case says, criminal forfeiture reaches only those assets which are owned by a particular defendant. That's at page 1370 of the Sayher opinion. So the precedent of this court is that the reach of the criminal forfeiture laws applies only to property owned by a defendant, and that is certainly consistent with Honeycutt's interpretation of the criminal forfeiture laws writ large, that there is no common law liability, either for co-conspirator liability, there's no joint and several liability. And here in Sayher... Your position is that he had to actually have possession of it. That's what I'm hearing. He had to obtain it in some meaningful sense. But it went through his bank account. It wasn't his bank account. If you look at the joint appendix page... He was a signatory on that account, was he not? He was the only signatory on the account. I don't know that he was the only signatory, but the point is, it wasn't his money. It wasn't his money for purposes of title, possession. And it was the corporation money. This court in Sayher made that very distinction. If you remember in Sayher, there were the two jewelry stores. This court said, we recognize joint and several liability, we recognize money judgments, but you can't pierce the corporate veil silently. You have to establish that before you're going to hold one jewelry company liable for the assets involved in another jewelry store, you have to show they're just one entity by piercing the corporate veil. That never happened here. There's no evidence, allegation, even till today, that Mr. Wackhead is the same thing as Vita Panama. Instead, what happened here is that Vita Panama was a co-defendant, was an alleged co-conspirator. The government decided that it would seek a sentence from the person who could actually serve time in jail. And Mr. Wackhead came to the United States for that purpose. It decided to dismiss Vita Panama, the company that had the account, the company whose money it was. May I read you from the factual proffer that your client signed and agreed to? Sure. During the time period of approximately 2000 from February 2009, the defendant was the general manager of Vita Panama, a Panamanian-based corporation, and was the owner of two Miami-based corporations, Star Textile and Global World. He had signature authority on the bank accounts of all three corporations. Yes, including the ones here. That is right. Whether he's the only one that had signature authority is what I said. I didn't know. And again, Vita Panama, if you look at the joint appendix, I believe it's page 51 is where it starts, the actual credit account is there, and it's a credit account for corporate credit. He also issued wire transfer draws on Vita Panama's credit line at the International Commerce Bank of China. And those were specifically done with his authority and through his direction. Well, that's true, but the money was both coming, going, and returning Vita Panama's money, not his. Am I mistaken? Your client did plead guilty to conspiracy to commit money laundering, right? That's right. And after Honeycutt, you know that there is no such thing as co-conspirator liability in the criminal forfeiture laws. I think that's perhaps an overstatement of Honeycutt. Well, with all due respect, I believe that is what Honeycutt held, because in that case, the brother was indeed a co-conspirator. Honeycutt held that where a party did not, where a party, where there are proceeds, and one party actually received all the proceeds, and the other party didn't, you couldn't hold the two jointly and severally liable. That's right. It's a different proposition than what you're setting out. You may want to extend it to that, but it's not the same thing. Well, when the Supreme Court cites the Pinkerton case, and rejects the Pinkerton case as the basis for forfeiture liability, I take that to mean that they're saying you can't have co-conspirator liability. I could be wrong. If I could briefly take up the points raised by opposing counsel, he said that his key point was that forfeiture was justified because Judge Scola improperly required the defendant to retain the assets, and that that was an improper application of the forfeiture laws. That's not exactly, that's not what Judge Scola did. All Judge Scola did was recognize the undisputed facts, which is they were never obtained by Mr. Wachette. How can you dissipate assets you don't obtain? How can you be responsible for, required to retain assets you never obtained? Again, that's why the basic principle is you can forfeit property. They can go after Vita Panamoff to forfeit property, to forfeit his property, but you can't forfeit property that you never had. They also make an argument that forfeiture is somehow necessary to create a basis for substitute assets forfeiture. Well, quite frankly, they didn't ask for substitute assets forfeiture by motion below, so I don't even know that's properly before this court, but substitute assets forfeiture is used to obtain a defendant's own property, not somebody else's property. You can't use substitute assets to impose forfeiture in the first instance. They also argue that forfeiture is justified as a species of money judgments, forfeiture money judgments. We respectfully submit that Honeycutt would preclude that as a non-statutory basis for forfeiture. We acknowledge that this court has, both in the past and recently, indicated it was going to continue with forfeiture money judgments. The district court here didn't rule that they're unavailable, but we respectfully submit to this court that after Honeycutt, they are unavailable. Even if we are wrong, the fact is this court has already addressed that issue in the Sahar case. In the Sahar case, one of the issues was a request, in fact an imposition, of a forfeiture money judgment. This court said you can't impose a forfeiture money judgment that effectively takes the property of one defendant for property obtained by the other defendant. One jewelry store is not responsible for the other jewelry store's forfeiture. You have to pierce the corporate veil. You can make an argument that piercing the corporate veil is also a common law remedy and therefore should be unavailable after Honeycutt, but this court's precedent under the case law saying that there is such an animal as a forfeiture money judgment is that you have to pierce the corporate veil before you can hold one defendant liable to the other defendant's forfeiture. Counsel, how do you address the discussion in Honeycutt that discusses obtaining property either directly or indirectly? For example, the example used or the hypothetical used in Honeycutt is the drug mastermind who obtains money directly through direct payments from drug purchasers or arranges to have drug purchasers pay the intermediate, which is the college student. But in both cases, under Honeycutt, the top person is responsible for all the funds that are laundered because they're being obtained directly or indirectly. So in this case, how is it not an indirect obtaining by your client? I would agree with the court that Honeycutt certainly didn't short sell, if you will, proceeds forfeiture and that if a drug kingpin were to obtain money, that money is subject as proceeds to being forfeit, even though he may have given it to somebody else to hold. That's not this case. This is a case where the corpus was identified. First off, there's no proceeds in this case, none. And so there isn't an issue about where proceeds obtained or not. Here it's a single corpus, a single amount of money. Its origins and destinations are all present and accounted for. There's no issue with respect to what happens to that money. And it was available to the government to go after when Vida Panama was a defendant. But as to Vida Panama, but they chose basically to have someone who they can incarcerate to and they dismissed Vida Panama from this case. And we respectfully submit that that's an election. Thank you. Thank you. Thank you, Your Honors. I want to make just two or three points in rebuttal before turning very quickly to the  On the basis for Judge Scola's order here, I don't think it's fairly read as turning on an obtained rationale in any way. I'm just going to read from the order. In this case, all of the funds that were laundered were returned to the bank with interest. There are no laundered funds that were retained by the defendant or any other co-conspirator to be forfeited. I think it's quite clear that his rationale turned on a retained analysis. And for the reasons I argued earlier, and there's a specific reference to Section 982B2, we don't think that rationale is sound as far as substitutes. Just to follow that point, I mean, the statute A1, 982A1, refers to involved in, I mean, in your view of the world, once money is involved in, it's always involved in, or I mean, I kind of like, I think this is a hard case. I think you both have good arguments, but I kind of like the other side's argument about there is a time when money is no longer, quote, involved in and therefore forfeitable. What's your answer to that? Well, I think, Your Honor, that might come into play in figuring out how much money is involved in. And as I understand it, Your Honor, there was a dispute below, and it's been ironed out in the briefs here somewhat about the amount of funds involved in. Is it just the amount that came into the money laundering transactions, or if there were mirrored transactions, is it the higher amount here the government originally asked for of $20.8 million? I think that's where those concerns could come into play, that there would be an endpoint to the transactions that trigger, that embody the forfeiture amount. But as to whether there are any funds involved in that, I think there were here. Clearly when someone takes proceeds out, engages in the laundering transactions, at a minimum, that level of transaction. Even when they give them all back? Yes. Still involved in. When they give them all back, that goes through restitution. And I think otherwise, Your Honor, you can- But you said that there is no restitution in money laundering. I shouldn't- I don't want to make that as a broad concession. There was no restitution due in Owen in this case. I don't know that- Under the money laundering statute, is a district court judge authorized to order a defendant to give restitution? Not under the statute itself, but the way the federal restitution framework works is that the statutes triggering restitution obligations is a general statute. It's 18 U.S.C. 3664A, I think. And that is what defines offenses against property, crimes of violence, whatnot. So I don't want to rule out the possibility that in some other case, money laundering could itself- Okay. In this case? In this case, no restitution due in Owen. Undisputed. Okay. But forfeiture liability still- So if the trial court judge had entered an order of restitution, an order of forfeiture, could he have entered an order saying, I am required by law to enter an order, I have no discretion on this, but I find that the corpus no longer exists, it has been returned, and there is nothing else to forfeit under 982A. Because there's only three reasons you can do under 982A. I don't think the court could do that, because all we asked for here was a forfeiture of money judgment. If we were going after a specific property, trying to trace specific property, that would be a problem. But why would you be entitled to a money judgment for corpus that has already been returned? Because that would be the same, Your Honor, as if the defendant had taken the money and spent it. If he had spent it himself, the funds no longer exist, the proceeds of the fraud that preceded the laundering- But then wouldn't you be traveling then under 853P? I think we're actually under 853P in our situation, Your Honor. It's the same way, whether the funds are dissipated by the defendant spending it as the Seventh Circuit said on wine, women, and song, or as part of his fraudulent scheme, because he needed to send that money back to keep the scheme going. Either way, funds are not retained. Well, but if it's 853P, then you have a situation, because now it's with a third party, assuming that the Bank of China is a third party. All those proceedings, the defendant has mentioned 853N for third-party interest, 853P for substitute property, come into play at the next stage of this case. First, the district court has to enter a forfeiture of money judgment, and then if third parties have interests that they want to raise, then they raise those under 853N after the forfeiture of money judgment's entered. Likewise- But here, I guess the question is, is the Bank of China, and I'm sorry that I've gone over, is the Bank of China a third party? Or since it's a victim, it doesn't qualify as a third party under 853P? I'm getting confused, Your Honor, between 853N and 853P. I think the third-party interests are usually raised under 853N, 853P is the substitute asset provision that lets us go after the defendant's untainted assets once we have the forfeiture money judgment and can establish that one of the conditions in the statute is satisfied and the defendant no longer retains the money that was the subject of the money laundering transaction. So I think we're a step ahead of that, that's why we'd ask the court to reverse and remain with instructions to enter the forfeiture money judgment we've asked for in the amount of 10.426, or if Judge Grant's math is better than mine and it requires further proceedings in that amount- But why should we, if, let's just say that we agreed that it was mandatory, why would we not just remand for that and then for further determination as to what the amount should be? Because it seems to me that it's not necessarily so clear cut. Well if that's what the court wants to do, we wouldn't object to that with the caveat that we think it's very important to put kind of an Eighth Amendment floor on this. I haven't had a chance to argue that, but I would just mention very quickly that under the fine range that was set forth in the plea agreement and in the PSR paragraph 75 and 76, the maximum fine by statute and guidelines is the $20.8 million amount. So under this court's cases, any forfeiture amount up to $20.8 million is entitled to a strong presumption of constitutionality. So because Judge Scola made an alternative finding and a footnote, I'm sorry Judge Martin for going over, we just asked that- I know, I know, I'm starting to panic up here. But we would just ask that the court give some kind of guidance to make clear what the Eighth Amendment parameters are. So if Judge Scola resolves any dispute as to the amount, that he's not further reducing it once again to account for Eighth Amendment concerns that we think are unjustified. Thank you. Thank you. And I appreciate both of you coming today. I think this is a hard case. I know you would have preferred to have put this off until Friday and we tried. And I think there's some other litigants here that wanted to reschedule. But it's hard to get this group together. They're so popular. So thank you for being here. We appreciate your help.